UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13538-RGS

58 SWANSEA MALL DRIVE, LLC

v.

GATOR SWANSEA PROPERTY, LLC

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

June 2, 2016

Plaintiff and tenant 58 Swansea Mall Drive, LLC (58 Swansea), leases space at the Swansea Mall in Swansea, Massachusetts, from landlord-defendant Gator Swansea Property, LLC (Gator). 58 Swansea sublets the leasehold to two retailers, Dollar Tree Stores and PriceRite. 58 Swansea alleges that Gator has attempted to coerce it into adopting a Chik-Fil-A restaurant as a subtenant by making unreasonable demands for repairs and threats to hold 58 Swansea in default. 58 Swansea alleges that Gator's tactics cost it a favorable third-party loan that could have been used to make repairs to the Mall.

BACKGROUND[1]

---

[1] Although in considering a motion to dismiss, the "court is generally limited to considering 'facts and documents that are part of or incorporated into the complaint.' . . . A district court may also consider 'documents

On May 20, 1984, Gator's predecessor, Equity Properties and Development Company, entered a Ground Lease (lease) with 58 Swansea's predecessor, Service Merchandise Company, Inc., for 58 Swansea Mall Drive. The lease permitted 58 Swansea to mortgage its interest without Gator's prior consent on two conditions: (1) that 58 Swansea not be in default "beyond the applicable grace period[]"; and (2) that either 58 Swansea or the mortgagee provide the landlord (Gator) with a copy of the mortgage. Dkt. # 56-1 at 8.[2]

After purchasing 58 Swansea Mall Drive in 2013, Gator insisted that 58 Swansea undertake substantial repairs of the property. In June of 2015, 58 Swansea (reluctantly) agreed. To pay for the repairs, 58 Swansea negotiated a loan with United Bank, secured by the leasehold. As a condition precedent to the loan, United Bank required that Gator provide 58 Swansea with an Estoppel Certificate. After some initial squabbling, Gator provided the Estoppel Certificate on July 30, 2015. It warranted in relevant part:

---

incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (internal citations omitted).

[2] Article 13 of the lease provides that any default by either party of the performance of any contractual obligation may be cured by the non-defaulting party, at the expense of the defaulting party, on ten days' prior notice.

> [58 Swansea] is not in default under the Lease beyond the applicable grace, notice and/or cure periods and, except for the repairs and maintenance as evidenced by the construction documents attached hereto . . . Landlord does not know of any other defaults . . . provided, however, that [Gator] reserves the right to declare a default by [58 Swansea] under the Lease in the event [58 Swansea] does not complete the repair and maintenance work identified on the construction documents . . . within ninety (90) days after the date of this Estoppel Certificate.

Dkt. # 56-7 at 2-3. Gator gave 58 Swansea until October 28, 2015, to complete the three specified improvements.[3]

As a second condition precedent, United Bank required that Gator execute a so-called 3(n) Agreement, stipulating that the Bank was an intended beneficiary of the terms of Article 6, Section 3 of the lease.[4] Over

---

[3] These included a repaving of the parking lot, repainting the adjacent light poles, and installing a guard rail. Although no other needed repairs were identified in the Certificate, on August 7, 2015, Gator presented 58 Swansea with a Property Condition Report identifying a number of additional improvements that it wanted made. 58 Swansea completed some, but not all of these repairs. Gator demanded that 58 Swansea reimburse it for the costs of the Report.

[4] Article 6, Section 3 lists Gator's obligations to any mortgagee, and the various rights of the mortgagee under the Ground Lease. Article 6 further provides that:

> Landlord **shall**, upon request, execute, acknowledge and deliver to each Leasehold Mortgagee . . . an agreement . . . in form reasonably satisfactory to each Leasehold Mortgagee, between Landlord, Tenant and such Leasehold Mortgagee, **agreeing to all of the provisions of this Section.**

3

the next two months, Gator renewed its demand that 58 Swansea accept Chik-Fil-A as a tenant. It declined, however, to execute the 3(n) Agreement. On September 8, 2015, United Bank and 58 Swansea agreed on the terms of a $2,000,000 loan, conditioned on the tender of an executed 3(n) Agreement no later than October 15, 2015. After Gator ignored repeated requests for the Agreement, on October 2, 2015, 58 Swansea instituted this action and sought injunctive relief in the Norfolk Superior Court. Three days later, Gator served a Notice of Default and Termination on 58 Swansea.[5]

On October 9, 2015, Gator removed the case to this court on diversity grounds. After a requested emergency hearing on October 15, 2015, the court denied 58 Swansea's motion for a preliminary injunction. At some unspecified later date, Gator signed and forwarded the 3(n) Agreement to 58 Swansea. The delivery came too late to salvage the loan agreement. United Bank terminated the loan on October 28, 2015.

On April 14, 2016, 58 Swansea filed this Second Amended Complaint, alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and violations of the Massachusetts Unfair

---

*Id.* at 11 (emphasis added).

[5] Gator's counsel also emailed 58 Swansea a revocation of the Estoppel Certificate.

Business Practices statute, Mass. Gen. Laws ch. 93A (Counts IV and V). 58 Swansea also requests specific performance of the lease (Count III), and a declaratory judgment as to whether (a) 58 Swansea is in default, (b) whether Gator improperly revoked of the Estoppel Certificate and issued the Notice of Termination, and (c) whether 58 Swansea is obligated to reimburse Gator for the Property Condition Report (Count VI). On April 21, 2016, Gator moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

DISCUSSION

To survive a motion to dismiss pursuant to Rule 12, the pleading must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Gator offers a number of alternative theories in support of its motion to dismiss the breach of contract claim (Count I).[6] Gator stresses that Article

---

[6] Some of these arguments can be summarily addressed. Gator argues at length (particularly in its Reply), that 58 Swansea failed to provide prior notice of the mortgage to Gator as required by Article 6, Section 2 of the lease, thereby freeing Gator of any ensuing obligations related to the mortgage. As 58 Swansea disputes the notice allegation, this is an issue of fact that cannot be resolved on a motion to dismiss.

40 of the lease (an exculpation clause of a type commonly appearing in ground leases) disclaims liability on the part of Gator to "personally to perform any covenant . . . herein contained." Dkt. # 56-1 at 29. Exculpatory clauses are strictly construed in favor of the tenant. *Cormier v. Cent. Massachusetts Chapter of the Nat'l Safety Council*, 416 Mass. 286, 288 (1993) ("[A]ny doubts about the interpretation of the release must be resolved in the [tenant's] favor."); *Marsman v. Nasca*, 30 Mass. App. Ct. 789, 799 (1991) ("[E]xculpatory clauses are not looked upon with favor and are strictly construed."). The purpose of an exculpation clause is not to shield the landlord from *any* liability for breach of contract, but to protect the

---

Gator next argues that 58 Swansea was in default of the lease and that Gator therefore was under no obligation to execute the 3(n) Agreement. This argument also misses the mark. 58 Swansea vehemently disputes that it was at any time in default; on a motion to dismiss, a plaintiff's plausible factual allegations must be taken as true. While Gator relies upon the Estoppel Certificate executed by both parties as evidence that 58 Swansea acknowledged its own state of default, the Certificate identified only three specific repairs and granted 58 Swansea a ninety-day period to cure them, which 58 Swansea insists that it did.

Third, Gator argues that 58 Swansea could have, consistent with Article 13 of the lease, signed the 3(n) Agreement itself on Gator's behalf, and offered the completed agreement to United Bank. Characterizing Article 13 as a "condition precedent" and "pre-suit requirement," Gator contends that 58 Swansea's failure to do so bars recovery. Article 13 merely states that a non-defaulting party *may*, on ten days' notice, perform the obligations of a defaulting party – not that it *must*. Dkt. # 56-1 at 17-18.

6

landlord's assets over and above the landlord's interest in the property itself.[7]

Gator's further contention that the exculpation clause "bars all of 58 Swansea's claims," Mot. to Dismiss at 8, overstates the purpose of the clause.

Gator argues that since it *eventually* supplied 58 Swansea with a signed 3(n) Agreement, Gator has complied with its obligations under the lease and 58 Swansea's claim for breach of contract is therefore moot. 58 Swansea alleges that the document was not, as required by the lease, timely delivered in a form reasonably satisfactory to United Bank.[8] This dispute raises questions that can only be answered through discovery.[9]

---

[7] Gator concedes that the exculpation clause provides merely "that the remedies for any alleged default of the lease by the Landlord may only be satisfied out of [Gator's] *interest* in the Shopping Center." Mot. to Dismiss at 9 (emphasis added). Since the time the lease was originally executed in 1984, exculpation clauses such as Article 40 have been rendered superfluous by the proliferation of single-purpose limited liability companies (as Gator and 58 Swansea are), which permit recovery only against the assets of the LLC itself.

[8] Specifically, 58 Swansea alleges that Gator's purported 3(n) Agreement modified the terms of the lease and the rights of both 58 Swansea and United Bank as mortgagee, where the lease itself required that Gator execute an unadorned agreement simply affirming its existing obligations.

[9] 58 Swansea alleges that the proffered 3(n) Agreement was not timely because Gator failed to deliver the 3(n) Agreement prior to United Bank's deadline of October 15, 2015. The lease, it is true, specifies no explicit time limit for the execution and delivery of the 3(n) Agreement. However, the law will impute a reasonable time for performance of a contractual obligation, *Peterson v. Tremain*, 35 Mass. App. Ct. 422, 425 (1993); *see also Lubin & Meyer, P.C. v. Lubin*, 427 Mass. 304, 309-310 (1998). As Gator has not

58 Swansea's Count II states a derivative claim for breach of the implied covenant of good faith and fair dealing.[10] 58 Swansea alleges that Gator's failure to provide the 3(n) Agreement, despite repeated requests, interfered with its enjoyment of the lease, and moreover the refusal to provide the Agreement was motivated by an improper coercive purpose (to impose Chik-Fil-A as a tenant on 58 Swansea). Because the reasonableness and good faith of Gator's actions is in dispute, *see Robert and Ardis James Found. v. Meyers*, 474 Mass. 181, 189, 191 (2016), the motion to dismiss Count II must be denied.[11]

---

alleged *any* specific date of performance, the court cannot conclude as a matter of law that Gator executed the 3(n) Agreement within a reasonable time.

[10] The implied covenant "provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (internal citations and quotation marks omitted).

[11] Count III requests specific performance of the lease. Specific performance is an equitable remedy, *see Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 208 (1993), usually pleaded as an alternative to money damages, the more typical relief sought for breach of contract. As specific performance is a remedy, not a freestanding cause of action, the prayer is better considered in the context of a grant of relief, if one is eventually deemed warranted. While the court does admit some puzzlement as to what remains to be specifically performed, this is an issue to be addressed later in the litigation.

While it is true that 58 Swansea's Mass. Chapter 93A claims may not, as Gator argues, be based solely on a breach of contract, the breach may be actionable where a party knowingly and intentionally acts to obtain an unbargained-for benefit to the detriment of the other party. *T. Butera Auburn, LLC v. Williams*, 83 Mass. App. Ct. 496, 508 (2013). That arguably is the case here, where 58 Swansea alleges that Gator's refusal to deliver an executed and timely 3(n) Agreement, which it was obligated to do under the terms of the lease, was part and parcel of a plan to coerce 58 Swansea into accepting Chik-Fil-A as a tenant, something that it had no contractual obligation to do.[12]

Finally, Count VI of the Complaint, which seeks declaratory judgment, is based on a misunderstanding of the purpose of such a judgment. In the usual course, declaratory judgment is a means of avoiding litigation, particularly where the party seeking judgment faces imminent hardship. *See Dist. Attorney for the Suffolk Dist. v. Watson*, 381 Mass. 648, 659 (1980) (declaratory judgment appropriate where there is "a 'real dispute' caused by

---

[12] With respect to 58 Swansea's second claim under Chapter 93A (Count V) – that Gator improperly issued the Notice of Termination and improperly revoked the Estoppel Certificate – Gator maintains that since it reversed both positions, 58 Swansea can suffer no ongoing harm. Gator does not suggest any reason why it should not be liable for any *prior* harm that its actions may have caused.

9

the assertion by one party of a duty, right, or other legal relation in which he has a 'definite interest,' in circumstances indicating that failure to resolve the conflict will almost inevitably lead to litigation."). Here litigation has commenced, and the topics nominated by 58 Swansea for declaratory interpretation are the warp and woof of Counts I, II, IV, and V of the Complaint. Under the circumstances, the court will exercise its "substantial discretion" in declining to entertain declaratory judgment. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).

                              ORDER

For the foregoing reasons, Gator's Motion to Dismiss is <u>ALLOWED</u> as to Count VI and is otherwise <u>DENIED</u>.

                              SO ORDERED.

                              /s/ Richard G. Stearns_____
                              UNITED STATES DISTRICT JUDGE